J-S09026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER L. LASSITTER | |
| Appellant | No. 1192 MDA 2015 |

Appeal from the Order Entered June 12, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002583-2011

BEFORE:  PANELLA, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 11, 2016**

Christopher L. Lassiter appeals from the trial court's order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46.  After careful review, we affirm.

On February 27, 2013, Lassiter pled nolo contendere to third-degree murder[1] and conspiracy[2] in connection with the 2011 shooting death of a rival gang leader's girlfriend.  Lassiter committed the instant crime with two associates, Oscar Martinez and Jakwan Green.  Martinez admitted to shooting the victim multiple times when she answered the door to her home. Lassiter provided Martinez with a loaded gun and drove the get-away car.

_____

[1] 18 Pa.C.S.A. § 2501.

[2] 18 Pa.C.S.A. § 903.

The Commonwealth filed a notice of its intent to seek the death penalty[3] against all defendants. One week before his scheduled trial, Lassiter decided to waive his right to a jury trial and plead guilty. Pursuant to a negotiated plea agreement, the court sentenced Lassiter on February 27, 2013, to 10-20 years' imprisonment for the conspiracy conviction and 20-40 years in prison for the murder conviction. The sentences were ordered to run consecutively for an aggregate sentence of 30-60 years in prison.

On February 25, 2014, Lassiter filed a timely, *pro se* PCRA petition alleging counsel's ineffectiveness for failing to file a direct appeal. Counsel was appointed to represent Lassiter; PCRA counsel filed an amended petition on April 30, 2014, raising the same claim of ineffectiveness for failing to file an appeal or consult with Lassiter regarding an appeal. The court held evidentiary hearings on July 18, 2014, and November 14, 2014. On June 12, 2015, the court denied Lassiter's petition. This timely appeal follows.

On appeal, Lassiter presents the following issue for our review: Was Defendant denied effective assistance of counsel[4] by counsel's failure to file a timely appeal despite Defendant's repeated requests to do so?

_____

[3] **See** 42 Pa.C.S.§ 9711.

[4] To prove a claim of ineffectiveness, a defendant must establish that: (1) the underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his client's interests; and (3) but for counsel's ineffectiveness, *(Footnote Continued Next Page)*

- 2 -

To succeed on a claim that counsel was ineffective for failing to file a direct appeal, a defendant must plead and present evidence that he in fact requested counsel to pursue a direct appeal and that counsel failed to do so. **Commonwealth v. Dockins**, 471 A.2d 851 (Pa. Super. 1984). In **Commonwealth v. Touw**, 781 A.2d 1250 (Pa. Super. 2001), our Court was guided by the United States Supreme Court's decision, **Roe v. Flores-Ortega**, 528 U.S. 470 (2000), which answered the question of whether "counsel [is] deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other[.]" **Id.** at 477. The **Flores-Ortega** Court held that:

> [Counsel] has a constitutionally-imposed duty to consult with his client about an appeal when there is reason to think that either (1) a rational defendant would want to appeal[] or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

**Id.** at 480.

Lassiter contends that after he was sentenced he asked counsel multiple times to file a direct appeal because he was under the impression that his aggregate sentence of imprisonment would be 20-40 years, not 30-60 years. He also contends that he believed the court ran the individual

(Footnote Continued) ———————————

there is a reasonable probability that the outcome of the proceedings would have been different. **Commonwealth v. Luster**, 71 A.3d 1029, 1039 (Pa. Super. 2013).

- 3 -

sentences concurrent to one another, rather than consecutively. A careful review of the record belies these assertions.

Lassiter testified that he first told plea/sentencing and penalty phase counsel[5] that he wanted to file a direct appeal while he was in a holding cell following his sentencing hearing. N.T. PCRA Hearing, at 28-30. Lassiter also claimed that he sent at least two letters to plea/sentencing counsel advising him that he wished to file a direct appeal. *Id.* at 32, 36. After a comprehensive hearing where Lassiter, plea/sentencing counsel and penalty phase counsel testified, the court found Lassiter's testimony not credible. Specifically, where Lassiter failed to present any substantive proof that he mailed the letters to counsel and where counsel convincingly testified that Lassiter never asked him to file an appeal nor did counsel reasonably believe that Lassiter would have wished to appeal his negotiated sentence, the trial court denied collateral relief.

Lassiter testified at the PCRA hearing that he sent plea/sentencing counsel two letters: the first asked counsel to file a notice of appeal on his behalf, N.T. PCRA Hearing, 7/18/14, at 32, and the second told counsel because the 30-day appeal period had expired, Lassiter was going to be

---

[5] Lassiter was represented at plea and sentencing by Mark P. Walmer, Esquire. Penalty phase counsel, Janice L. Martino Longer, Esquire, was also appointed to represent Lassiter and was present in Lassiter's holding cell following sentencing.

filing a PCRA petition raising counsel's ineffectiveness for failing to file a requested direct appeal. *Id.* at 36. Despite these contentions, Lassiter was unable to present copies of post-marked envelopes of the mailed letters or any certified copies of the letters to show proof that they were actually mailed. *Id.* at 33-34, 37, 45. Rather, Lassiter told the court to accept as proof of having mailed the letters to counsel the fact "that I'm saying I put [them] in the mailbox." *Id.* at 37.

To rebut Lassiter's testimony, plea/sentencing counsel and penalty phase counsel testified that Lassiter never indicated to them that he wished to file an appeal or that he was discontent with his sentence. *Id.* at 15, 21-22, 64. Moreover, plea/sentencing counsel testified that he never received any letters from Lassiter expressing a desire to file an appeal. *Id.* at 18, 23, 24. *See also id.* at 58 ("[i]f I had received a letter telling me that somebody is going to challenge me for ineffectiveness, . . . I would have immediately done what was necessary in order to try to address the client's issues. That's what you do."). Rather, counsel testified that because he had worked so hard to get the death penalty off the table, he believed that Lassiter was pleased with his 30-60 year sentence, stating:

> We had just spent days working out a case to his satisfaction that removed the death penalty, turned to a nolo, turned to a lower charge and gave him a number to plead to.
>
> At every point preparing for trial and at every point getting ready to sell the plea, it was what [Lassiter] wanted. If we would have gone into the lockup afterwards and he said he would have wanted to file an appeal, first of all, [penalty phase

counsel] and I would have immediately done so because it's a moral obligation, an ethical obligation.

Secondly, it would have just rocked our worlds and we would have said, Chris, what are you talking about, we just fought to get this deal. You just went through with it and now you are telling us to file a motion to modify or an appeal?

I mean that didn't happen. That isn't the kind of 180 reversal that I would forget about.

*Id.* at 22.

Lassiter's testimony at the evidentiary hearing also contradicts his prior sworn testimony presented at the guilty plea colloquy and in his written colloquy. For example, Lassiter testified at the PCRA hearing that he thought his sentences would be "running together." *Id.* at 41, 43. However, the record clearly shows that the trial court informed Lassiter that he would be serving an aggregate 30-60 year sentence, *see* N.T. Plea Colloquy, 2/27/13, at 11 ("these charges are being sentenced consecutively, one after another, . . . for an aggregate or net sentence of 30 to 60 years."), and that Lassiter agreed to the consecutive sentences. *Id.* ("Do you understand that? Yes."). *See Commonwealth v. Willis*, 68 A.3d 997, 1009 (Pa. Super. 2013) (defendant bound by statements made in open court, during plea colloquy, while under oath). Moreover, Lassiter was given several opportunities to speak on his own behalf if he had any displeasure with the intended sentence; he never objected. N.T. PCRA Hearing, 7/18/14, at 22, 24-25.

The record supports the finding that Lassiter's testimony was both self-serving and not credible and that counsel was credible.

- 6 -

***Commonwealth v. Madison***, 462 A.2d 228 (Pa. 1983) (appellate court must give great weight to court's findings regarding credibility of witnesses in PCRA proceeding). Accordingly, because Lassiter did not succeed in proving that he requested that counsel pursue a direct appeal, ***Dockins***, ***supra***, or that a rational defendant would want to appeal, ***Touw***, ***supra***, we affirm the trial court's decision to deny his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2016